## WILLIAM LYNCH vs. CITY OF FALL RIVER.

Bristol.   October 28, 1957. — January 2, 1958.

Present: WILKINS, C.J., SPALDING, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*School and School Committee. Municipal Corporations,* Municipal finance.

A vote adopted by the school committee of a city in June after the annual
appropriations, making teachers' salary increases for which, because of
existing vacancies, the amount already appropriated for teachers'
salaries was sufficient without any supplemental appropriation, was
within the power of the committee and binding on the city.

BILL IN EQUITY, filed in the Superior Court on September 20, 1956.

The suit was heard by *Kirk,* J.

*A. Kenneth Carey,* for the plaintiff.

*James P. McGuire,* for the defendant.

WILKINS, C.J.   The superintendent of schools of the defendant city brings this bill for a declaratory decree as to the validity of votes of the school committee purporting to increase the salaries of teachers. From a final decree declaring that the votes are not binding on the city, the plaintiff appealed.

The judge made findings of fact. Fall River has a Plan A form of city charter. Late in 1955, the superintendent prepared budget estimates for 1956, which were adopted by the school committee and presented to the mayor. On February 14, 1956, the mayor submitted the budget to the city council by which, at least so far as related to salaries and administration of schools, it was approved on March 27, 1956. At all times the item for "Teachers and Administration Salaries" for 1956 was $2,636,300. This figure was upon the basis of a teaching staff at full strength with no vacancies. In June, 1956, because a number of vacancies

existed, there was a larger unexpended balance in this item than there would have been if the vacancies had been filled. On June 25, 1956, the school committee passed the votes in question increasing the teachers' salaries. The details of the votes need not be set forth. The unexpended amount in the salary item was sufficient to pay the increased salaries as long as the vacancies were not filled. The mayor refused to approve payrolls based upon the votes, and payments at the lower rates have been accepted by the teachers without waiver of rights.

No question is made as to the traditional supremacy of the school committee in the field of education, nor is it controverted that the school committee have the absolute right to fix the salaries of public school teachers. *Watt* v. *Chelmsford*, 323 Mass. 697, 700, and cases cited. *School Committee of Gloucester* v. *Gloucester*, 324 Mass. 209, 213–214. *Attorney General* v. *Ware*, 328 Mass. 18, 20. *Cotter* v. *Chelsea*, 329 Mass. 314, 317. *Casey* v. *Everett*, 330 Mass. 220, 222. G. L. (Ter. Ed.) c. 71, § 34, as appearing in St. 1939, c. 294. The city's contention is that such right must be exercised prior to the adoption of the annual budget. Reliance is placed upon § 33A of the municipal finance act, G. L. (Ter. Ed.) c. 44, as appearing in St. 1955, c. 358, which reads in part, "The annual budget shall include sums sufficient to pay the salaries of officers and employees fixed by law or by ordinance." The school teachers' salaries, however, were fixed not "by law or by ordinance," but by contract. G. L. (Ter. Ed.) c. 71, § 38. See *McCarthy* v. *Malden*, 303 Mass. 563, 567; *Callahan* v. *Woburn*, 306 Mass. 265, 273.

In *Hayes* v. *Brockton*, 313 Mass. 641, it was held that § 31A, inserted by St. 1941, c. 473, § 1, of the municipal finance act did not apply to a school committee, which, accordingly, did not have to submit budget estimates by December first. The decision in *Young* v. *Worcester*, 333 Mass. 724, in no way derogates from the force of that decision.

The city also urges that a supplemental appropriation was necessary, because until the end of the year there could be no true "balance" or "surplus" from which the increased

amounts voted could be paid. The plaintiff counters that the original appropriation was sufficient, and that the school committee have the power to expend it for teachers' salaries in any way they see fit. It should be noted, if material, that the words "balance" and "surplus" appear only in the argument of the city, and were not used by the school committee in the votes.

The case at bar is controlled by *Leonard* v. *School Committee of Springfield*, 241 Mass. 325. There the school committee submitted to the mayor estimates for expenses of the public schools which, among other things, included an increase in compensation for many teachers, as well as salaries of additional teachers. The mayor reduced the amount in transmitting his budget to the city council. After the budget became effective, the school committee, in order to provide money for the increased salaries, voted to eliminate summer schools and kindergartens and to curtail expenses under other separate headings in the budget. At page 327, it was said, "The precise question to be decided is whether the school committee has power thus to carry out its policy as to the management of the school system or whether it is bound by the action of the mayor and city council to the items set forth in the budget without power to modify or change them in any substantial particular." In deciding the question in favor of the school committee, the court said, at page 332, the opinion being by Chief Justice Rugg: "It is to be noted that no question here is raised as to an attempt by a school committee to spend more than a total appropriation made for the support of the public schools. The school committee only assert a right to fix the salaries of teachers in conformity to their own sound discretion without being restricted in this regard to particular items specified in the budget. That contention is sound. The statutes, interpreted as an harmonious body of laws in the light of our history and traditions as to the public school system, confer upon the school committee of Springfield power to establish the salaries of teachers within the total amounts appropriated by the budget, according to their best judg-

ment of public needs, as set forth in G. L. c. 71, and other laws governing the conduct of the public schools."

The case at bar is a stronger one for the school committee, because here no money was taken from other headings in the budget to pay the increased salaries.

The final decree is reversed and a new final decree is to be entered declaring that the votes of the school committee of June 25, 1956, are binding on the city.

*So ordered.*