FRANK A. DAY, JUNIOR, & others *vs.* CITY OF NEWTON.

Middlesex.    April 4, 1961. — May 4, 1961.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, & CUTTER, JJ.

*School and School Committee. Municipal Corporations,* Municipal finance, Officers and agents, Out-of-State travel. *Words,* "Necessary."

Under G. L. c. 71, § 34, expenditures for the transportation, food, lodging, and registration fees of members of a school committee in attending a convention of the National School Boards Association, which afforded the members "an opportunity to obtain information and ideas of assistance . . . in the performance and discharge of the [committee's official] duties," might reasonably be deemed by the committee to be "necessary" expenditures for which it was mandatory that the city provide money.    [569–570]

The school committee of a city could properly deem that travel of its members to attend a convention of the National School Boards Association outside Massachusetts would result in securing "information upon matters in which the city . . . [was] interested or which . . . [might] tend to improve the service in" the school department, and necessary expenditures for such travel under a specific appropriation for out-of-state travel were authorized by G. L. c. 40, § 5, cl. 34.    [570–571]

G. L. c. 40, § 5, cl. 34, authorizing appropriations for certain travel expenses of "municipal officers and employees" outside Massachusetts, is a general authorization and applies to members of municipal boards or committees.    [571–572]

Upon a duly submitted request by the school committee of a city for an appropriation for the expenses of out-of-state travel reasonably thought "necessary" by it, the appropriating body of the city, in making a specific appropriation for out-of-state travel under G. L. c. 40, § 5, cl. 34, must appropriate the full amount requested and could not restrict the school personnel who would travel thereunder or the objects of the travel.    [572]

The appropriating body of a city in making an annual appropriation order was not authorized to delete from the school committee's budget an item for "necessary" out-of-state travel of its members on the ground that the travel expenses had been incurred in advance of the order.   [572]

If G. L. c. 44, § 34, was applicable, its provisions were satisfied where expenditures for out-of-state travel by the school committee of a city before the annual appropriations for the fiscal year of the travel were made by its appropriating body were less than the largest amount spent for a similar purpose in any one month in the preceding fiscal year.   [572–573]

G. L. c. 44, § 34, where applicable to expenditures for out-of-state travel, does not require a subdivision of such travel into subitems of travel for different purposes or by different persons.   [573]

PETITION, filed in the Superior Court on May 26, 1959.

The case was heard by *Quirico, J.*

*Matt B. Jones,* City Solicitor, for the respondent.

*Frederick G. Fisher, Jr., (Blair L. Perry* with him,) for the petitioners.

WHITTEMORE, J.   The board of aldermen of Newton in its annual appropriations for 1959 deleted from the budget of the school committee $1,100 of the $9,500 requested for out-of-state travel, and restricted the appropriation to the purposes of providing funds "for recruiting teachers outside the State," and sending members of the "professional staff to meetings of national organizations and to conferences of subject matter areas."   This excluded an item to cover travel expenses of members of the school committee in January, 1959.   Sixteen taxable inhabitants brought a petition under G. L. c. 71, § 34, to require that the amount of the deleted appropriation be provided together with twenty-five per cent thereof.   The decree in the Superior Court ordered this relief and decreed void the restriction imposed by the board of aldermen.

1.   The expenditures for out-of-state travel of school committee members were, on the evidence and the findings of the judge in the Superior Court, "necessary" expenditures of the committee under G. L. c. 71, § 34,[1] which in

---

[1] "Every city and town shall annually provide an amount of money sufficient for the support of the public schools as required by this chapter. . . ."

effect requires that "the municipalities must provide the money that is necessary for the support of public schools." *Ring* v. *Woburn,* 311 Mass. 679, 682–683, 695. Within a wide limit "necessary" means reasonably deemed by the committee to bear a relation to its statutory mandate. *Ring* v. *Woburn,* 311 Mass. 679. *Cotter* v. *Chelsea,* 329 Mass. 314, 317–318. *Casey* v. *Everett,* 330 Mass. 220, 222–223. *School Comm. of Salem* v. *Gavin,* 333 Mass. 632, 634. *Graves* v. *Fairhaven,* 338 Mass. 290, 293. Compare *Whittaker* v. *Salem,* 216 Mass. 483, 485; *Simpson* v. *Marlborough,* 236 Mass. 210; *Eastern Mass. St. Ry.* v. *Mayor of Fall River,* 308 Mass. 232; *School Comm. of Gloucester* v. *Gloucester,* 324 Mass. 209.

The contested item of $1,100 was to cover expenditures of $1,028.85 for the transportation, food, lodging, and registration fees of three members of the school committee incurred in attending a convention of the National School Boards Association in San Francisco. The judge found that such attendance "affords . . . an opportunity to obtain information and ideas of assistance . . . in the performance and discharge of the [committee's official] duties." This was supported by the testimony of two distinguished educators and of a member of the committee. These witnesses referred to the advantages of communication between the school committees of the nation, particularly in view of Federal aid to education and the high mobility of the population; the advantages of information about and observations of new methods and materials of instruction. The annual school budget in Newton is in excess of $7,000,000.

Although a public officer may not inform or educate himself generally at public expense, he may make expenditures to obtain information about special aspects of his task. *William W. Drummey, Inc.* v. *Cambridge,* 282 Mass. 170, 175 (school committee may obtain expert advice about need of repairs to buildings). In-the-state and out-of-state travel for such purposes is now authorized by statute. General Laws c. 40, § 5, cl. 34 (inserted by St. 1928, c. 36),

provides that money may be appropriated "For the necessary expenses of municipal officers and employees of any particular department incurred outside the commonwealth in securing information upon matters in which the city or town is interested or which may tend to improve the service in such department . . . if such appropriation is specified to be and is limited to such expenses incurred as aforesaid. Such expenses may also be incurred anywhere within the commonwealth and in such case shall be chargeable against any appropriation made for the ordinary maintenance of the department incurring the same." Compare *Waters* v. *Bonvouloir,* 172 Mass. 286 (1899).

That the power may be subject to abuse as a means of providing junkets at public expense does not diminish the power. Such is a consideration for the Legislature and its concern in the premises is shown in the requirement of a special appropriation for out-of-state travel.

The expenditures of the committee for travel to San Francisco are within the authorization of G. L. c. 40, § 5, cl. 34. We cannot say that the committee could not find that the travel of its members to San Francisco would result in securing "information . . . in which the city is interested" or which would "tend to improve the service in such department."

There is no suggestion that the budgeted item was a mere sham or pretence. This is disposed of by the finding of "good faith." That good faith in the technical sense is not in issue is shown by *Kelley* v. *School Comm. of Watertown,* 330 Mass. 150, 153–154. See *Graves* v. *Fairhaven,* 338 Mass. 290, 294.

There is no implication in the wording of cl. 34 that members of a *board* or *committee* may not travel out-of-state though municipal *officers* may do so. We read the authorization as general. If it is not, there is an equal and clearly unreasonable implication against travel expenditures for board and committee members within the State. The statute is addressed to allowing those who serve municipalities in public office, and employees, to travel for

the purposes stated, but with a requirement to show to all interested, by an express designation, the amount for out-of-state travel.

2.  General Laws c. 40, § 5, cl. 34, does not vest in the appropriating body control over out-of-state travel by the school committee or its agents. All the appropriations for schools must be made by the legislative branch of the municipality. Those which are "necessary" for schools must be made in the amount that the committee requests. We assume that c. 40, § 5, cl. 34, is applicable inasmuch as it is a part of the basic statement of purposes for which a municipality may appropriate funds. Its intent as applied to the school committee is fully served when the committee designates in its budget the item for out-of-state travel as the clause requires, and the board of aldermen, or other appropriating body, makes the appropriation with that restriction, and no other, applying thereto.

3.  There is nothing in the city's contention that the board of aldermen could reject the item because it had been expended in advance of the annual appropriation order.

In every year all kinds of school expenditures must be made in substantial amount in advance of the appropriations. If the expenditures are "necessary" and if, in cities, they are included in the budget duly submitted (*Young* v. *Worcester,* 333 Mass. 724, 729–730), and, in towns, are requested of the town meeting (*Illig* v. *Plymouth,* 337 Mass. 239, 241–242), the municipality must make the appropriation. Items for out-of-state travel are like all others in this respect.

The evidence is that the total expended by the committee in January, 1959, for out-of-state travel was $1,146.80, and the largest amount spent therefor in any one month in 1958 was $1,939.04. Therefore to whatever extent G. L. c. 44, § 34, is applicable (which we need not decide, see *Averell* v. *Newburyport,* 241 Mass. 333, 335; *Callahan* v. *Woburn,* 306 Mass. 265; *Ring* v. *Woburn,* 311 Mass. 679, 693; cases cited in *School Comm. of Gloucester* v. *Gloucester,* 324 Mass. 209, 213–214; *Casey* v. *Everett,* 330 Mass. 220, 222–225; *Lynch*

v. *Fall River,* 336 Mass. 558; *Graves* v. *Fairhaven,* 338 Mass. 290, 293–294, and cases cited), its provisions are satisfied. This statute, where applicable, does not require a subdivision of the out-of-state travel into subitems of travel for different purposes or by different persons. Of course, nothing in our holding will prevent an appropriating body from ferreting out and excluding patently illegal items or subitems in any category of expenditure.

It is inconsequential that the board of aldermen had refused an "advance appropriation" for the contested item.

*Decree affirmed.*